I must respectfully dissent from the decision of my brothers on the court.
I have carefully studied the transcript of the testimony in this case and the finding of facts by the distinguished trial judge. I am constrained to say that there is no evidence from records kept by defendant as required by the statute which supports the finding and judgment of the court.
It is without dispute that the testimony offered by the taxpayer to overcome the prima facie correctness of the assessment is not derived from the records of the taxpayer. That fact is clearly disclosed from the words of the C.P.A. who presented all of the material testimony on behalf of taxpayer. For instance, we quote pertinent portions of his testimony:
 We felt that the amount of the tax was erroneous . . . in that we felt there was services that Mr. Ludlam had performed that were being taxed so we tried to determine a method, due to the lack of records during this period of time by which we could arrive at that would be his taxable sales. We did it from two different approaches. (R. 9) (Emphasis ours.)
The first approach he used was explained:
 Now, I asked Mr. Ludlam if he would contact all of his suppliers and get from them a statement of the goods that he had bought or the total goods he had bought during the period under audit. . . . Those figures were the basis for this computation. . . . By taking the merchandise bought for resale, adjusting for inventory, marking it up, and adding the raised merchandise we arrived at a sales price and computed sales tax on that sales price for the period under audit. (R. 9, 10)
The second "method" used by the C.P.A. was to use a two-month sample or test period in September and November of 1976. (These months were not within the assessment period.) In the words of the C.P.A., "This approach was to take the total deposits for this period of time and try to remove from those any non-taxable sales to arrive at the sales of merchandise which would be taxable." (R. 11, 12) From this test period he determined what percent of income was sales of tangible personal property and what percent of income was from services. The percentages derived from this test period were then applied to calculated net bank deposits for the audit period. "This gave us an estimated tangible sales figure on which we figured city and state sales tax," said the C.P.A. (R. 13)
The finding of the trial court that "approximately 80% of the income of the taxpayer during the taxable period was for services on which no tax was due" was not derived from any records kept by the taxpayer during the taxable period. It could only have come from testimony by taxpayer's son that he calculated it from records being kept by him as bookkeeper for a five-month period during 1978 and extrapolated and applied to each taxable year. That evidence was duly objected to by the State but admitted by the court. Again, it did not come from any record kept during the assessment year.
In considering his ruling upon the admission of this fabricated figure, the court verbalized the exact issue in the case. I quote:
 Well, of course, ordinarily, I think it would have some relevancy but when you come to a state law that requires the keeping of records, the big question is whether or not these formulas and test periods, and that sort of thing, is going to supply the demands of the law for accurate records. (R. 40)
The court exactly described the context of taxpayer's evidence. It is undisputed that the taxpayer kept no records during the assessment years of gross sales, gross receipts or gross receipts of sales from which the amount of tax could be determined. It is admitted that the prima facie correct assessment is disputed not from any valid and definitive record to the contrary, but upon formulas and calculations made from verbal assertions, un-itemized and unidentified bank deposits, other material not kept *Page 1094 
as records but assembled after the assessment, and percentages fabricated from so-called test from periods subsequent to the years in question.
I do not believe the cases cited as authority by the majority support the decision in this case. Each of them explicitly holds that it is the statutory duty of the taxpayer to keep and preserve sufficient records of gross sales and receipts of his business from which the tax may be determined. In each of the cases it is stated that there were records of invoices (State v.Mims) or of sales (State v. Levey) in existence at the time of the audit, though unartfully kept, sufficient to make a determination of the tax. There is no case which holds that the assessment may be overcome by subsequent fabrication and calculations from test periods, formulas, verbal assertions or mere assumptions as is found in this case. To overturn the assessment in this case is to ignore the statute requiring the keeping of records and establishing the prima facie correctness of the assessment. The majority has quoted from the case of Statev. T.R. Miller Mill Co., supra. That quote is a paraphrase of the decision in State v. Levey, supra. In Levey the court continued: "Records should be available disclosing the business transacted. Of necessity, if the statute is to be considered of any practical operation, the books should be so kept as to properly reflect the sales claimed as exempt that an examination will establish their true character. . . ." State v. Levey, supra, 248 Ala. at 658,29 So.2d at 131. That observation is appropriate to this case.
I also disagree with the majority that the trial court did not err in taking judicial knowledge of the city limits of Eufaula. Such was not a matter which the court could judicially know. I understand the majority does not expressly say to the contrary. However, it does not aid the court's ruling to say that the State does not dispute the knowledge of the court. The State was not required to dispute the court's conclusion in order to claim error from it.
Neither does the evidence in this case bring it within the principle of the holding in Armstrong v. State, supra. The fact that the taxpayer's witness testified that his calculations of tax due were based upon the tax rate applying to a business located without the city limits but within the police jurisdiction is not a circumstance from which may be inferred the true location of the business. To require the State to refute that as if it were fact would place the burden upon the State of proving the location rather than the taxpayer. The State's assessment was premised upon the business being within the city limits of Eufaula. The burden was upon the taxpayer to establish that it was otherwise. The trial court expressly stated in its judgment that it judicially knew that the business was without the city limits but within the police jurisdiction. That it may in fact be so located does not excuse the court's error. It could not take such judicial knowledge. Armstrong v. State, supra.
For failure to produce evidence through records kept in accordance with the statute sufficient to overcome the prima facie correctness of the assessment, the assessment must stand.State v. Levey, supra, 248 Ala. at 658, 29 So.2d at 131. I would reverse and render.